UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| NOVO NORDISK A/S AND NOVO NORDISK INC., <br><br> Plaintiffs, <br><br> v. <br><br> RENEW WEIGHT LOSS MED SPA, LLC <br><br> Defendant. | Case No. _____ |

**COMPLAINT**

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") file their complaint against Renew Weight Loss Med Spa, LLC ("Defendant") for false advertising and unfair and deceptive trade practices, and seek monetary, injunctive, and other relief. Plaintiffs allege as follows on actual knowledge with respect to themselves and their own acts and on information and belief as to all other matters.

**INTRODUCTION**

1. Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat chronic diseases like diabetes and obesity.

2. Semaglutide is the foundational molecule that serves as the primary ingredient for three prescription-only medicines developed by Novo Nordisk and approved by the Food and Drug Administration ("FDA"): Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

1

3.     Novo Nordisk is the only company in the United States authorized to sell FDA-approved medicines containing semaglutide.

4.     Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

5.     The FDA has not approved any generic versions of semaglutide medicines.

6.     To the contrary, the FDA has sent warning letters to companies that claimed that their unapproved products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic and Wegovy are the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

7.     Novo Nordisk brings this action pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., and related state laws arising out of Defendant's acts of false advertising and unfair and deceptive trade practices.

8.     Defendant markets and sells to patients compounded drug products that purport to contain semaglutide.

9.     The semaglutide products sold by Defendant have not been evaluated by the FDA or clinically studied.

10.    Defendant nevertheless represents to consumers that its products are FDA-approved or the same as, or equivalent to, Novo Nordisk's FDA-approved semaglutide medicines and that they are clinically studied.

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

2

11. Defendant's marketing and other conduct is likely to confuse and deceive consumers into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

12. This complaint sometimes refers to the compounded drug products sold by Defendant that purport to contain semaglutide, but that have not been approved by the FDA, as the "Unapproved Compounded Drugs."

13. Defendant falsely claims or otherwise misleadingly suggests that its Unapproved Compounded Drugs are the same as or equivalent to the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines and have been clinically studied.

## THE PARTIES

14. Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark. NNAS developed the Ozempic®, Wegovy®, and Rybelsus® medicines and has granted to NNI exclusive rights to market, advertise, promote, offer for sale, and sell those medicines in the United States.

15. Plaintiff NNI is an indirect, wholly-owned subsidiary of NNAS, organized and existing under the laws of Delaware with a principal place of business in Plainsboro, New Jersey. NNI promotes, offers, and sells the Ozempic®, Wegovy®, and Rybelsus® medicines throughout the United States, including in this District.

16. Defendant Renew Weight Loss Med Spa, LLC is a Massachusetts limited liability company with a registered business address at 21 Leland Drive, Ludlow, Massachusetts, 01056, in this judicial district.

## JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 35 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

18. The Court has supplemental jurisdiction over the state law cause of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

19. Defendant is subject to personal jurisdiction in this District because Defendant is a Massachusetts-registered company and has a principal place of business in Massachusetts.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, manufactures or sells its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District.

## FACTS ENTITLING NOVO NORDISK TO RELIEF

A. <u>Novo Nordisk's FDA-Approved Semaglutide Medicines and Ozempic®, Wegovy®, and Rybelsus® Trademarks</u>

21. Novo Nordisk uses the trademarks "Ozempic," "Wegovy," and "Rybelsus" to identify and promote the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines.

22. Ozempic® is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

23. Ozempic® also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and heart disease as well as the risk of kidney failure and death from cardiovascular disease in adults with type 2 diabetes and chronic kidney disease.

24. Wegovy® is indicated to reduce body weight and maintain weight reduction in obese adults and children aged 12 years and older and adults with weight-related medical problems, along with a reduced calorie diet and increased physical activity.

25. Wegovy® is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of adverse cardiovascular events such as "cardiovascular" death, heart attack, or stroke in adults with heart disease and who are either obese or overweight.

26. Rybelsus® is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

27. Ozempic®, Wegovy®, and Rybelsus® have been studied in clinical trials and are FDA-approved.

28. Each of Ozempic®, Wegovy®, and Rybelsus® has a unique safety and efficacy profile which is set forth in its respective product label.

29. Ozempic®, Wegovy®, and Rybelsus® are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

B. Defendant's Sale of Unapproved Compounded Drugs

30. Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

31. The FDA has not approved Defendant's Unapproved Compounded Drugs.

32. On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

33. According to the FDA, compounding is a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the

supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

34. Compounded drugs are not FDA-approved.[3]

35. Because the FDA does not approve compounded drugs, the "FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[4]

36. The FDA has advised that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs. Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[5]

37. As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness. Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[6]

38. The process to produce the compounded semaglutide drug products sold by Defendant is different from the process used to produce the semaglutide in Novo Nordisk's FDA-approved medicines.

39. Novo Nordisk manufactures the semaglutide in its medicines, pursuant to its FDA approval, in yeast cells under a closely controlled multistep process that uses recombinant DNA technology.

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.
[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.
[4] *Id.*
[5] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.
[6] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.

40. The compounded semaglutide drug products sold by Defendant, by contrast, are made with a "semaglutide" manufactured via chemical synthesis.

41. The chemical synthesis process, which is not used for the semaglutide in any FDA-approved semaglutide medicines, has resulted in new impurities, higher levels of known impurities, immunogenicity concerns, and potential stability issues in tested samples of compounded "semaglutide."[7]

42. The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[8]

43. The FDA has stated that the containers and packaging (including multidose vials) used by compounders, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.

44. A publication from the Journal of the American Pharmacists Association also highlighted errors where patients accidentally self-administered doses of compounded "semaglutide" up to ten times greater than the prescribed amount.[9]

45. FDA has issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that: (1) "compounded drugs are not FDA-approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has

---

[7] Morten Hach *et al*, Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs, Pharm. Res., (Oct. 8, 2024), *available at* https://pubmed.ncbi.nlm.nih.gov/39379664/.

[8] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

[9] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

7

received reports of adverse events related to compounded versions of semaglutide . . . . However, federal law does not require state-licensed pharmacies that are not outsourcing facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported."

    C.   <u>Defendant's False Advertising of Unapproved Compounded Drugs</u>

    46.   Despite the foregoing, Defendant has made and continues to make false and misleading representations to patients regarding its Unapproved Compounded Drugs.

    47.   Defendant has promoted and continues to promote its Unapproved Compounded Drugs in connection with its operation and advertisement of its nonsurgical weight loss program, including on its website.

    48.   Defendant has falsely advertised and continues to falsely advertise its Unapproved Compounded Drugs by making statements that describe the Ozempic®, Wegovy®, and Rybelsus® medicines, but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

    49.   On its website, Defendant claims or implies that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality.

    50.   Defendant claims on its website that "Semaglutide … has now earned the green light from the FDA for weight management purposes too. This approval comes after stringent testing and reviews, underscoring its safety profile."

> Introducing a new medication into your regimen is a significant decision, and one that naturally sparks questions regarding safety. The good news is, Semaglutide, originally designed for type 2 diabetes management, has now earned the green light from the FDA for weight management purposes too. This approval comes after stringent testing and reviews, underscoring its safety profile.

51. Defendant also claims on its website that Semaglutide is "[t]he first FDA-approved chronic weight management treatment in nearly ten years."

**HOW DO SKINNY SHOTS WORK:**

The Skinny Shot is a medication that works by decreasing appetite and signaling to the brain a feeling of fullness, or satiety. The first FDA-approved chronic weight management treatment in nearly ten years, Semaglutide regulates insulin secretion and suppresses appetite. It can also reduce blood sugar and hemoglobin A1C, ultimately aiding in the weight loss process.

52. Defendant further claims on its website that "[l]ike all medications, semaglutide has potential side effects. However, it has been rigorously tested and approved by the FDA."

Is Semaglutide Safe?                                                                —

Like all medications, Semaglutide has potential side effects. However, it has been rigorously tested and approved by the FDA. Our team at RENEW will evaluate your health history to ensure Semaglutide is a safe option for you.

53. Defendant also claims on its website that "[d]eveloped initially for the treatment of type 2 diabetes, semaglutide has been recognized for its weight loss benefits. The U.S. Food and Drug Administration (FDA) has approved semaglutide for this additional use . . ."

**Development and Approval:**

Developed initially for the treatment of type 2 diabetes, Semaglutide has been recognized for its weight loss benefits. The U.S. Food and Drug Administration (FDA) has approved Semaglutide for this additional use, making it a versatile medication for both diabetes management and weight loss.

54. Defendant's statements regarding Plaintiff's FDA-approved medicines appear in the context of discussing Defendant's Unapproved Compounded Drugs.

55. Contrary to Defendant's representations, the FDA has not approved a "semaglutide" peptide generally. Instead, the FDA has approved three of Novo Nordisk's complete medicines, which contain semaglutide for the specific indications outlined in the preceding paragraphs.

56. Defendant's false representations mislead customers into believing, incorrectly, that the product with "semaglutide" offered by Defendant has been reviewed and approved by the FDA for safety and effectiveness.

57. The FDA has not reviewed the "semaglutide" allegedly in Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality, or otherwise as equivalent in safety, effectiveness, or quality to Novo Nordisk's medicines.

58. Defendant claims or implies on its website that its Unapproved Compounded Drugs have been subjected to clinical studies and trials or have otherwise achieved therapeutic outcomes attributable to the Wegovy®, Ozempic®, and Rybelsus® medicines.

59. In promotional materials on its website, Defendant claims: "In clinical studies, participants using semaglutide have shown an average weight loss ranging from 10% to 15% of their body weight."

**Impressive Weight Loss Results:**
Semaglutide has demonstrated remarkable efficacy in clinical trials and real-world applications. Many users have experienced significant weight loss, often surpassing results from traditional diet and exercise regimes. In clinical studies, participants using Semaglutide have shown an average weight loss ranging from 10% to 15% of their body weight. These figures are not just numbers; they represent a transformative journey towards a healthier and happier life.

60. Defendant also claims on its website that "In a broad-reaching study, those who were prescribed semaglutide experienced an average body weight reduction of 15 percent."

## The Success of Semaglutide in Clinical Trials

Clinical trials revolving around Semaglutide have lit a new beacon of hope in the fight against obesity. Picture this: in a broad-reaching study, those who were prescribed Semaglutide experienced an average body weight reduction of 15%. Now, that's a jaw-dropping figure when you compare it to the achievements of other weight loss drugs on the market.

61. Defendant further claims on its website that "clinical studies have shown that individuals taking semaglutide can lose up to 15% of their body weight within a year."

10

> As people prepare for summer, Semaglutide offers a promising solution for those struggling with weight loss. Clinical trials have shown that individuals taking Semaglutide can lose up to 15% of their body weight within a year. This substantial weight reduction can lead to improved self-esteem, better physical health, and a more enjoyable summer experience.

62.  Defendant also claims on its website that "a study published in the New England Journal of Medicine found that participants using semaglutide lost an average of 14.9% of their initial body weight over 68 weeks, compared to 2.4% for those taking a placebo."

### Clinical Studies Supporting Semaglutide

Several studies have highlighted the efficacy of Semaglutide in weight management:

- A study published in the <u>New England Journal of Medicine</u> found that participants using Semaglutide lost an average of 14.9% of their initial body weight over 68 weeks, compared to 2.4% for those taking a placebo.
- Research from the <u>Lancet Diabetes & Endocrinology</u> journal reported similar findings, with significant weight loss observed in participants using Semaglutide.

63.  Each of the claims, implications, or representations about clinical trials of the "semaglutide" product sold by Defendant in the preceding paragraphs 58–62 is false, misleading, or both.

64.  On information and belief, Defendant has not conducted any placebo-controlled or clinical studies on its Unapproved Compounded Drugs and is instead falsely and misleadingly referring to studies of Novo Nordisk's FDA-approved medicines to promote its Unapproved Compounded Drugs.

65.  Defendant claims or implies on its website that its Unapproved Compounded Drugs contain the same semaglutide that the FDA evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for the Wegovy®, Ozempic®, and Rybelsus® medicines.

66.  Defendant has claimed on its website that its Unapproved Compounded Drugs are equivalent to Novo Nordisk's FDA-approved and clinically proven Ozempic® medicine.

11

> Our prices are competitive and affordable for Semaglutide and Tirzepatide shots! Most of our clients are on treatment plans with Semaglutide which is the compounded form of Ozempic. Studies have shown that people can lose up to 15% of their body weight within a year while using Ozempic. Most of our clients do well with Semaglutide and lose plenty of weight during the duration of their treatment.

67. Defendant's representations characterizing the Ozempic® medicine as equivalent to "semaglutide" are misleading and falsely convey to customers that Defendant's Unapproved Compounded Drugs have been reviewed or approved by the FDA and have been clinically proven to work.

68. On information and belief, Defendant has engaged in and continues to engage in these unlawful practices to attract customers and generate revenues and profits.

69. Defendant's false and misleading statements and practices are likely to have caused and continue to cause mistake and deception in the marketplace.

70. Defendant's false and misleading marketing is also likely to have exposed and continue to expose patients to unnecessary risks. Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[10]

71. On information and belief, unless enjoined by this Court, Defendant will continue to falsely advertise its products as being, equivalent to, or associated with the Ozempic®,

---

[10] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested."); FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery ("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

Wegovy®, and Rybelsus® medicines, as it does throughout its marketing materials, all in violation of Plaintiffs' rights.

72. On information and belief, unless enjoined by this Court, Defendant's conduct will continue to cause mistake and deception.

## FIRST CAUSE OF ACTION

**Defendant's False and Misleading Advertising and Promotion
in Violation of 15 U.S.C. § 1125(a)(1)(B)**

73. Novo Nordisk realleges and incorporates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

74. Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

75. Defendant has violated and continues to violate the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

76. The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

77. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

78. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

13

79. By reason of Defendant's acts as alleged above, Novo Nordisk has suffered and, if Defendant is not enjoined, will continue to suffer injuries, including injury to Plaintiffs' business reputation.

80. Because Novo Nordisk's remedies at law are not adequate to compensate for all the injuries inflicted by Defendant, Novo Nordisk is entitled to entry of preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

81. Because the above-described acts of Defendant are willful, Novo Nordisk is entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

82. This case is exceptional, making Novo Nordisk eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

**Unfair and Deceptive Acts in Violation of Massachusetts Consumer Protection Law, M.G.L. ch. 93A *et seq*.**

83. Novo Nordisk realleges and incorporates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

84. The above-described acts of Defendant constitute unfair methods of competition, and unfair and deceptive acts in violation of Massachusetts law.

85. Defendant's actions occurred primarily and substantially within Massachusetts.

86. Defendant has caused and, if not enjoined, will continue to cause Novo Nordisk to suffer loss of money and property.

87. Defendant has irreparably harmed and, if not enjoined, will continue to irreparably harm Novo Nordisk and its reputation and goodwill as well as the interest of the public in being free from confusion, mistake, and deception.

88. Because Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant, the Court should enter permanent injunctive relief in addition to awarding damages and attorney's fees.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1. That the Court enter a judgment against Defendant that Defendant has:

   a. Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

   b. Engaged in unfair methods of competition and unfair and deceptive acts under Massachusetts's Consumer Protection Law, M.G.L. ch. 93A *et seq.*

2. That the Court declare that each of the above acts was willful.

3. That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

   a. using the Ozempic® and Wegovy® marks, including (i) use in any manner likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in the Ozempic® and Wegovy® marks, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

   b. advertising, stating, or suggesting that any Unapproved Compounded Drugs, including any Unapproved Compounded Drugs that either are available, directly

or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

  i. are, or contain, genuine or authentic Novo Nordisk Ozempic®, Wegovy®, or Rybelsus® medicines;

  ii. are sponsored by or associated with Novo Nordisk;

  iii. are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

  iv. achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

  v. achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

  vi. are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

  vii. contain any ingredient (including semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

c. engaging in unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines; and

  d. engaging in deceptive acts or practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

 4. That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

 5. That the Court award Plaintiffs monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines and that this monetary relief be trebled due to Defendant's willfulness, in accordance with 15 U.S.C. § 1117 and any applicable state laws.

 6. That the Court order Defendant to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

 7. That the Court award Plaintiffs punitive damages by reason of Defendant's willful unlawful actions with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

 8. That the Court award Plaintiffs pre-judgment and post-judgment interest on all damages.

9. That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

10. That the Court award Plaintiffs the costs of suit incurred herein.

11. That the Court grant such other or further relief as the Court may deem just and proper.

August 4, 2025

Respectfully submitted,

By: */s/ Mona Patel*

Mona Patel
Covington & Burling LLP
One International Place Suite 1020
Boston, MA 02110-2627
T +1 617 603 8804 |
mpatel@cov.com

*Attorney for Plaintiffs*
*NOVO NORDISK A/S and*
*NOVO NORDISK INC.*